UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | **Filed / Docketed** |
| | ) | **October 11, 2007** |
| CALLAHAN, RUSSELL LYNN and | ) | Case No. 07-10070-R |
| CALLAHAN, BONNIE LEE, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |

| | | |
|---|---|---|
| PATRICK J. MALLOY III, | ) | |
| TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No. 07-1021-R |
| | ) | |
| DANNY L. BRAZEAL, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
ORDER DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Before the Court is the Plaintiff's Motion for Summary Judgment and Brief in Support (Adv. Doc. 10), filed by Plaintiff Patrick J. Malloy III, Trustee (the "Trustee"), on July 23, 2007 ("Trustee's Motion"); Danny Brazeal's Combined [1] Response to Plaintiff's Motion for Summary Judgment and [2] Motion for Summary Judgment (Adv. Doc. 13), filed by Defendant Danny L. Brazeal ("Brazeal") on July 30, 2007 ("Defendant's Cross-Motion"); and the Plaintiff's Combined [1] Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment and [2] Plaintiff's Response to Defendant's Motion for Summary Judgment (Adv. Doc. 18), filed by the Trustee on August 22, 2007.

**I.      Jurisdiction**

The Court has jurisdiction of this "core" proceeding by virtue of 28 U.S.C. §§ 1334, 157(a), and 157(b)(2)(F); and Local Civil Rule 84.1(a) of the United States District Court for the Northern District of Oklahoma.

**II.     Summary Judgment Standard**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c), made applicable to this proceeding by Bankruptcy Rule 7056.

**III.    Trustee's Motion**

In the Trustee's Motion, the Trustee contends that by virtue of the Defendant's repossession of inventory from the Debtors, Russell and Bonnie Callahan (the "Debtors"), within ninety days of the date the Debtors filed their Chapter 7 bankruptcy petition in the absence of a security interest in the inventory, the Defendant received an avoidable preferential transfer of property of the Debtors, the value of which the Trustee is entitled to recover for the benefit of the estate. See 11 U.S.C. § 547(b). Based upon the Debtors' records that reflect the cost of each item of inventory existing at the time the Debtors ceased doing business, the Trustee contends that the inventory repossessed by the Defendant had a value of approximately $20,000. In the Defendant's Cross-Motion, the Defendant admits taking possession of the inventory within the preference period, but contends (1) he owned the inventory when he repossessed it and thus the inventory was not "property of the Debtors," and/or (2) the value of the inventory was substantially less than the Debtors'

records reflect, and the liquidation value of the inventory was, in fact, less than $5,000, which is the minimum threshold value established by Section 547(c)(9) for which a trustee may assert a preference action in certain cases.

The Court concludes that the value of the alleged preferential transfer is in dispute, constituting a genuine issue of material fact which precludes the entry of summary judgment in favor of the Trustee. Accordingly, the Trustee's Motion is denied.

**IV.     Defendant's Cross-Motion**

The Defendant contends that he is entitled to judgment as a matter of law because the inventory, the value of which the Trustee seeks to recover as a preference, was not property of the Debtors at the time the Defendant repossessed it, and therefore the Trustee cannot satisfy the first element of Section 547(b), *i.e.*, that the alleged avoidable transfer was a transfer of "an interest of the debtor" in property. Although facts material to the Defendant's assertion of ownership are undisputed, the parties disagree as to the legal conclusions to be drawn from the facts. The undisputed material facts are as follows:

On May 22, 2006, Defendant and the Debtors entered into an agreement that was memorialized in the Lease Agreement attached to the Complaint. Complaint (Adv. Doc. 1), ¶ 2; Answer, ¶ 2; Exhibit A to the Complaint ("Lease Agreement"). The Debtors agreed to lease certain real property, including a building, gas pumps, rights of way, easements and access, for a term of five years "for the purpose of conducting a convenience store thereon," and agreed to operate the store as "Dan's Stop 'N Shop." Lease Agreement at 1-2. The Debtors agreed to pay the Defendant a fifteen thousand dollar ($15,000) deposit, refundable

3

only upon full compliance with the lease, and three thousand dollars ($3,000) per month as rent. Id. at 2-3. The Lease Agreement provided that "should [the Debtors] default in any rental payment hereunder, this lease shall cease, and [the Defendant] shall be entitled to immediate possession of the premises." Id. at 3.

The Lease Agreement also provided that "[b]oth parties agree that [the Debtors] will purchase from [the Defendant] all inventory of the store for $_____ [sic]. [The Debtors] shall pay to [the Defendant] Three Hundred Dollars ($300.00) per month beginning on May 22, 2006 as payment for said Inventory, and on the same day of each and every month thereafter until paid in full." Lease Agreement at 2. At the time the Lease Agreement was executed, the space indicating the purchase price of the inventory was left blank, but the Debtors and the Defendant later agreed that the Debtors would purchase the inventory for $16,842.55, and the purchase price was later hand-written onto the executed contract by the Defendant, apparently with the consent of the Debtors. Trustee's Motion at 3, ¶ 3; Defendant's Cross-Motion at 3, ¶ a. The Debtors paid $300 per month for the inventory for approximately eight months. Trustee's Motion at 3, ¶ 5; Defendant's Cross-Motion at 3, ¶ a. During that time, approximately fifty percent of the beginning inventory was sold by the Debtors in the ordinary course of the convenience store business, and the inventory was replenished by the Debtors using proceeds from the operation of the store. Trustee's Motion at 3, ¶ 6; Defendant's Cross-Motion at 3, ¶ a. There is no provision in the Lease Agreement whereby the Debtors granted the Defendant a security interest in the inventory. Trustee's Motion at 3, ¶ 7; Defendant's Cross-Motion at 3, ¶ a.

The Lease Agreement also provided that the Defendant was obligated to pay applicable taxes on the real property and the Debtors were obligated to pay applicable taxes on equipment and inventory. Lease Agreement at 3. It further required the Debtors to "maintain all inventory and equipment, including gas pumps and office machines, in good condition, natural wear and tear accepted [sic]." Id. at 4. The parties agreed that the Lease Agreement "shall be governed by, construed, and enforced in accordance with the laws of the State of Oklahoma." Id.

On December 28, 2006, the Debtors ceased operating the convenience store. Trustee's Motion at 3, ¶ 8; Defendant's Cross-Motion at 3, ¶ a. The Debtors consulted with bankruptcy counsel in late December 2007, and the Defendant was advised (apparently by the Debtors' counsel) that the Debtors intended to file bankruptcy. Trustee's Motion at 4, ¶ 11; Defendant's Cross-Motion at 3, ¶ a. On January 2, 2007, the Debtors heard a rumor that the Defendant intended to repossess and reopen the convenience store, and therefore the Debtors placed a chain and lock on the door, apparently to prevent the Defendant from repossessing the inventory. Trustee's Motion at 4, ¶ 10; Defendant's Cross-Motion at 3, ¶ a. The Defendant removed the chain and lock and began operating the convenience store for his own benefit, effectively repossessing and dissipating the inventory left by the Debtors. Trustee's Motion at 4, ¶ 12; Defendant's Cross-Motion at 3, ¶ a.

The Defendant contends that the undisputed facts establish that the Debtors did not own the inventory at the time the Defendant repossessed it, and therefore the estate cannot recover the inventory or its value. The Defendant construes the Lease Agreement as granting

5

the Debtors title in the inventory only upon the full payment of the $16,842.55 purchase price. In support of his argument, the Defendant relies on the paragraph titled "Payment for Inventory" in the Lease Agreement, in which the parties agreed that the Debtors "will purchase" all the inventory from the Defendant for $16,842.55, by paying $300 per month, and the fact that the Debtors did not get a bill of sale from the Defendant. Lease Agreement at 2, Section 4.[1] The Defendant argues that the Lease Agreement contemplates that the purchase would take place in the future and that title to the inventory would not pass to the Debtors until all installments were paid, as in a "contract for deed" arrangement.

Oklahoma law governs the interpretation of the Lease Agreement. Lease Agreement at 4. The Defendant's contract for deed analogy does not advance the Defendant's position.[2] Although a contract for deed purports to reserve title of real property in the seller pending full payment of the purchase price by the purchaser, under Oklahoma law, a contract for deed constitutes a transfer of real property to the buyer, subject to a mortgage in favor of the seller. See Smith v. Frontier Fed. Sav. and Loan Ass'n, 1982 OK 90, 649 P.2d 536, 538. Moreover, a contract for deed cannot be foreclosed unless the contract has been perfected as a mortgage. See 16 O.S. § 11A. Accordingly, even if the Lease Agreement could be construed as a type of "contract for deed" covering inventory, under Oklahoma law, the contract would have

---

[1]The Defendant also claims that the fact that the Debtors did not recall ever paying any personal property tax on the inventory also indicates that the Debtors did not possess title to the inventory. The Lease Agreement, however, clearly assigns the obligation to pay personal property taxes on the inventory to the Debtors.

[2]A contract for deed is a method of transferring and taking a security interest in real property, and is an inappropriate means for transferring inventory. The Lease Agreement is clearly not a contract for deed.

6

transferred title to the Debtors upon execution, and the Defendant's interest would have been limited to a security interest. Thus, even under this scenario, the Defendant would not have had title to the inventory when he repossessed it.

Oklahoma law regarding the sale of personal property likewise considers a transfer to be complete either at the time of contracting, the time possession is assumed by the buyer, or the time a "document of title" is delivered to the buyer, depending on the contract's delivery terms, rather than upon the full payment of the purchase price. Because the Defendant's sale of inventory to the Debtors is a sale of goods,[3] Article 2 of the Oklahoma Uniform Commercial Code ("OUCC") governs when title passed to the Debtors. See 12A O.S. §§ 2-102; 2-401. Section 2-401 of the OUCC provides–

> (1) Title to goods cannot pass under a contract for sale prior to their identification to the contract (Section 2-501), and unless otherwise explicitly agreed the buyer acquires by their identification a special property as limited by this act. *Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest.* Subject to these provisions and to the provisions of the article on Secured Transactions (Article 9), title to goods passes from the seller to the buyer in any manner and on any conditions *explicitly agreed on by the parties*.
>
> (2) Unless *otherwise explicitly agreed* title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical *delivery of the goods, despite any reservation of a security interest and even though a document of title is to be delivered at a different time or place . . .*

*****

---

[3] "'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action." 12A O.S. 2-105(1).

>   (3)   *Unless otherwise explicitly agreed where delivery is to be made without moving the goods,*
>
>   > (a) if the seller is to deliver a tangible document of title, title passes at the time when and the place where he delivers such documents and if the seller is to deliver an electronic document of title, title passes when the seller delivers the document; or
>
>   > (b) if the goods are at the time of contracting already identified and no documents are to be delivered, *title passes at the time and place of contracting.*

12A O.S. § 2-401(1)-(3) ("Section 2-401") (emphasis added). Section 2-401 pronounces two immutable rules to which every sales agreement is subject. The first rule is that title cannot pass until goods are "identified to the contract." The Oklahoma Comment to Section 2-401 explains that goods are "identified to the contract" when "goods are ascertained as the goods which were the subject matter of the agreement." Oklahoma Code Comment to Section 2-401. The second rule is that once goods are in the possession of the buyer, any reservation of an interest or title by the seller is deemed a security interest. Subject to those two rules, the parties may otherwise determine by mutual agreement the point in the transaction that title will pass to the buyer. If the parties do not explicitly agree on a point in time (*i.e.*, the date of the contract, upon delivery, etc.), Sections 2-401(2) and (3) provide default rules for determining the transfer of title of goods. Specifically, if parties fail to explicitly agree on a time for passage of title and the goods are to be physically delivered by the seller to the buyer, title passes to the buyer upon physical delivery. See 12A O.S. § 2-401(2). If the agreement is silent regarding passage of title and the goods are already in the place where the buyer will take possession, Section 2-401(3) provides that title passes upon the delivery of

a "document of title" if one is contemplated, or at the time of contracting, if no "documents of title" are involved.  See 12A O.S. § 2-401(3).

In no event, however, may title remain in the seller after the buyer takes possession of the goods (or of a "document of title" to the goods, if applicable), regardless of the parties' agreement or intent.  See O'Dell v. Kunkel's, Inc., 1978 OK 29, 581 P.2d 878, 881 ("[d]evices whereby title is reserved in the seller-creditor for a period of time following possession by the debtor are treated under Article 9 of the U.C.C. as though title had been transferred to the debtor and the seller-creditor had retained only a security interest in the goods"); Morton Booth Co. v. Tiara Furniture, Inc., 1977 OK 45, 564 P.2d 210, 212.  See also, Pro Page Partners, LLC v. Message Express Paging Co. (In re Pro Page Partners, LLC), 270 B.R. 221, 229-31 (Bankr. E.D. Tenn. 2001) (contract for sale of personalty is not an executory contract if the seller has surrendered possession, even if the agreement provides for the retention of title pending completion of payments; the effect of such attempt to retain title was a reservation of a security interest); In re J. Adrian Sons, Inc., 205 B.R. 24 (Bankr. W.D.N.Y. 1997);[4] Associated Indus. v. Keystone Gen'l, Inc. (In re Keystone Gen'l, Inc.),

---

[4] The seller in Adrian, like the Defendant in this case, contended that it retained title to goods identified to a contract for sale that did not require "moving the goods."  The bankruptcy court concluded that both Section 2-401(1) and Section 2-401(3) applied to the facts and that the seller retained at most a security interest in the goods.

> Because § 2-401(1) deals with express agreements regarding passage of title as a general rule, § 2-401(2) and § 2-401(3) can only be viewed as dealing with certain common fact patterns in which the parties did not make express agreement regarding passage of title, and where, for example, the goods are being shipped, the goods are in storage or are at their usual place of repose, or where (as here) the goods are already in possession of the buyer.  The "Unless" clauses which introduce them demonstrate the drafters' intent that §

135 B.R. 275, 279 (Bankr. S.D. Ohio 1991) ("if the seller attempts to retain title after delivery or until paid in full, all the seller gets is a security interest"); Marlow v. Oakland Gin Co. (In re Julien Co.), 128 B.R. 987, 996 (Bankr. W.D. Tenn. 1991) (while the parties could provide by contract when title to cotton would pass to the buyer, "when such an agreement involves retention of documents of title after shipment or delivery, it is limited in effect to the granting of a security interest in favor of the seller"), *aff'd on other grounds* 44 F.3d 426 (6th Cir. 1995); In re Gull Air, Inc., 73 B.R. 820, 824 (Bankr. D. Mass.1987); North Georgia Toyota v. Jahn (In re Tom Woods Used Cars, Inc.), 24 B.R. 529, 530 (Bankr. E.D. Tenn. 1982).  See also Stewart v. Barry County Livestock Auction, Inc. (In re Stewart), 274 B.R. 503, 510-11 (Bankr. W.D. Ark.) (bill of sale which transferred title that was voidable in the event payment was not made was ineffective pursuant to Section 2-401(1) because "any retention or reservation by the seller of title (property) in goods shipped or delivered to the

---

2-401(2) and (3) are "default" rules– rules that apply in the absence of contrary agreement.  But any contrary agreement cannot conflict with § 2-401(1).  The "Unless . . ." clauses are to be read as if they said:  "In the absence of *such* an agreement which explicitly provides to the contrary ...," in which event the "such" would refer to agreements contemplated by § 2-401(1), including its limitations.  This writer has tinkered with the language and is convinced that there is no logical construction of § 2-401(2) or § 2-401(3) that would permit disobedience to § 2-401(1).  Section 2-401(1) deals with agreements.  Sections 2-401(2) and (3) deal with certain fact patterns in the absence of such an agreement.

Adrian, 205 B.R. at 26-27. The bankruptcy court concluded that § 2-401(1) "'places limits on the parties' contractual freedom.  Specifically, § 2-401(1) negates any attempt to forestall passage of title beyond the moment of final delivery; contract language purporting to do so merely results in a security interest being retained.'" Id. at 26, *quoting* Connecticut Bank & Trust v. Schindelman (In re Bosson), 432 F. Supp. 1013, 1020 n.24 (D. Conn. 1977).

10

buyer is limited in effect to a reservation of a security interest"), *aff'd* 282 B.R. 871 (B.A.P. 8th Cir. 2002).[5]

In light of the undisputed facts in this case, the Court concludes that pursuant to Sections 2-401(1) and (3), title to the inventory passed to the Debtors at the time the contract was executed. Although the Defendant contends that the phrase "will purchase" reserved title in the Defendant until the Debtors fully paid the purchase price of the inventory, even if the phrase could be considered an explicit agreement to delay transfer of title, under Section 2-401(1), any such attempt is not effective to retain title, and at most, is *"limited in effect to a reservation of a security interest."* 12A O.S. § 2-401(1) (emphasis added).

Although the Defendant also contends that the absence of a bill of sale proves that title did not pass to the Debtors, a bill of sale is largely irrelevant in determining when a purchaser of goods acquires title. Section 2-401(3) *does* permit a seller to retain title to goods until a "document of title" is delivered, but the "document of title" referred to in Section 2-401(3) is –

> a record that in the regular course of business or financing is treated as adequately evidencing that the person in possession or control of the record is entitled to receive, control, hold, and dispose of the record and the goods the record covers *and that purports to be issued by or addressed to a bailee and to cover goods in the bailee's possession* which are either identified or are fungible portions of an identified mass. The term includes bill of lading, transport document, dock warrant, dock receipt, warehouse receipt and order for delivery of goods. . . . A tangible document of title means a document evidenced by a record consisting of information that is on a tangible medium [as opposed to an electronic document].

---

[5]In each of the bankruptcy cases cited, the court applied Section 2-401 of the Uniform Commercial Code as adopted by the state whose law governed the issue. In each case, the provision applied is substantially identical to 12A O.S. § 2-401.

11

12A O.S. § 1-201(16) (emphasis added).  A bill of sale is not a "document of title" under Section 2-401(3).  See In re Gull Air, Inc., 73 B.R. 820, 824 (Bankr. D. Mass. 1987).  The Defendant's failure to deliver a bill of sale to the Debtors did not prevent the Debtors from obtaining title to the inventory.  Because the Debtors took possession of the inventory *in situ*, pursuant to Section 2-401(3)(b), title to the inventory passed to the Debtors at the time the Lease Agreement was executed.

Consequently, the Defendant's assertion that he is entitled to judgment as a matter of law because the transfer the Trustee seeks to avoid did not involve property of the Debtors has no merit.

The Defendant also argues that he is entitled to judgment on his affirmative defense under Section 547(c)(9) of the Bankruptcy Code, which provides that a "trustee may not avoid under [Section 547] a transfer . . . if, in a case filed by a debtor whose debts are not primarily consumer debts, the aggregate value of all property that constitutes or is affected by such transfer is less than $5,000."  11 U.S.C. § 547(c)(9).  Because the value of the inventory is in dispute, summary judgment in favor of the Defendant on his affirmative defense is not warranted.

**V.     Conclusion**

For the reasons stated herein, the Trustee's Motion and the Defendant's Cross-Motion are denied.

**SO ORDERED** this 11th day of October 2007.

DANA L. RASURE, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT

12